IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOEL MUÑOZ CINTRÓN,

 Plaintiff,

 v.

COMMISSIONER OF SOCIAL SECURITY,

 Defendant.

CIVIL NO.: 19-1526 (MEL)

**OPINION AND ORDER**

**I. Procedural and Factual Background**

Pending before the court is Mr. Joel Muñoz Cintrón's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 27. On October 9, 2015, Plaintiff filed an application for Social Security benefits alleging that on February 10, 2015 ("the onset date"), he became unable to work due to disability. Tr. 27.[1] Prior to the onset date, Plaintiff worked as a mechanic maintenance supervisor and dump truck driver. Tr. 37, 63. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. Tr. 29. Plaintiff's disability claim was denied on February 12, 2016, and upon reconsideration. Tr. 27.

Thereafter, Plaintiff requested a hearing which was held on March 19, 2018 before Administrative Law Judge Livia Morales ("the ALJ"). Tr. 27, 40, 46-69. On April 27, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 40. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

---

[1] "Tr." refers to the transcript of the record of proceedings.

review. Tr. 1-8. Plaintiff filed a complaint on May 30, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 27, 30.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. Tr. 29. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, bilateral carpal tunnel syndrome, cervical spine disorder, lumbosacral disorder with L5 radiculopathy, and major depressive disorder. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 30. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 1567(a) except climb stairs and ramps frequently, but never ladders, ropes or scaffolds. He can balance frequently, stoop occasionally, kneel occasionally, crouch occasionally and crawl occasionally. He should not be exposed to unprotected heights. He can frequently be exposed to moving mechanical parts and operating a motor vehicle. He can frequently handle and finger with his bilateral upper extremities. In addition, the claimant can perform simple and routine work and adapt to changes limited to simple work-related decision[s]. He can frequently interact with public and frequently with coworkers.

Tr. 31.[2] At step four, the ALJ determined that through the date last insured, Plaintiff could not perform his past relevant work as a mechanic maintenance supervisor and dump truck driver. Tr. 37. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 37-38, 65-66. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: interviewer and credit authorizing clerk. Tr. 38, 66. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 39-40.

---

[2] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling 83–10, 1983 WL 31251, at *6.

**III.     Legal Analysis**

Plaintiff's sole challenge to the ALJ's decision is that her determination at step five of the sequential process is not supported by substantial evidence. ECF No. 27, at 1, 4-5. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). First, Plaintiff argues that the vocational expert's ("VE") testimony that the credit authorizing clerk job has a specific vocational preparation ("SVP") rating of SVP-2 is contrary to the Dictionary of Occupational Titles ("DOT") which provides that the credit authorizing clerk job has a rating of SVP-3. ECF No. 27, at 6; Tr. 66.

The DOT is "published by the United States Department of Labor [and] is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work." Augustine v. Barnhart, Civ. No. 01-749, 2002 WL 31098512, at *6 (E.D. Tex. Aug. 27, 2002). According to the DOT, an SVP level refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dumont v. Berryhill, Civ. No. 16-11502, 2017 WL 6559758, at *6 (D. Mass. Dec. 22, 2017) (citing DOT, App. C, § II.). "The DOT assigns an SVP for each occupation, on a scale of SVP-1 through SVP-9." Id.; O'Brien v. Astrue, Civ. No. 7-34, 2007 WL 3023617, at *2 n.3 (D. Me. Oct. 12, 2007) ("SVP levels range from 1 (short demonstration only) to 9 (over ten years)."). "Social Security Ruling 00-4p provides that '[u]sing the skill level definitions in 20 C.F.R. § 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semiskilled work corresponds to an SVP

of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.'" Dumont, 2017 WL 6559758, at *6 (citing Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *3).

In the case at hand, the VE testified that the job of credit authorizing clerk has a rating of SVP-2. Tr. 66. According to the DOT, however, the credit authorizing clerk job has a rating of SVP-3 which means it corresponds to semi-skilled work. See DOT No. 209.587-014, 1991 WL 671798, (4th Ed. Rev. 1991); Dumont, 2017 WL 6559758, at *6. The Commissioner concedes that the VE erred in testifying that the credit authorizing clerk job has a rating of SVP-2. ECF No. 30, at 6. It is further conceded by the Commissioner that because the credit authorizing clerk job has a rating of SVP-3, "it corresponds to semi-skilled work and thus is outside of Plaintiff's RFC of unskilled work." Id. at 6. Nonetheless, the Commissioner contends that the ALJ's step five determination is still supported by substantial evidence because the VE testified that Plaintiff could also perform the job of interviewer. Tr. 66.

In the case at bar, the VE testified that there are 180,0000 interviewer jobs in the national economy, a number which was reduced by 80 percent due to Plaintiff's lack of English fluency. Tr. 66. Thus, the Commissioner argues that the 36,000 interviewer jobs constitutes a significant number of jobs in the national economy.[3] ECF No. 30, at 7. To satisfy its burden at step five of the sequential process, "[t]he Commissioner need show only one job existing in the national economy that [plaintiff] can perform." Bavaro v. Astrue, 413 F. App'x. 382, 384 (2d Cir. 2011) (citing 20 C.F.R. § 404.1566(b)). Therefore, the mere fact that the ALJ identified only one occupation that Plaintiff can perform does not constitute a ground for remand. See Cabreja v. Astrue, Civ. No. 11-130, 2012 WL 272746, at *4 (D.R.I. Jan. 27, 2012) (explaining that at step five it "is sufficient if there exists one occupation which the applicant is capable of

---

[3] 36,000 interviewer jobs are 20 percent of the 180,000 interviewer jobs identified by the VE. Tr. 66.

7

performing."); Sprague v. Astrue, Civ. No. 10-150, 2011 WL 1253894, at *3 (D. Me. Mar. 30, 2011) (explaining "that the availability of a single job for the plaintiff meets the Commissioner's burden at Step 5.").

Furthermore, the Commissioner's argument that 36,000 interviewer jobs constitutes a significant number of jobs existing in the national economy has merit. See Purdy v. Berryhill, 887 F.3d 7, 12, 16-17 (1st Cir. 2018) (finding that the ALJ was entitled to rely upon the testimony of a vocational expert that found 32,400 total available jobs in the national economy); Dashnaw v. Astrue, Civ. No. 10-456, 2011 WL 5040708, at *6 (D.N.H. Oct. 24, 2011) ("The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary jobs identified by the ALJ. That is a 'significant number' of jobs in the national economy."); Vining v. Astrue, 720 F. Supp. 2d 126, 137 (D. Me. 2010) ("The figure of 11,000 jobs nationwide is in line with what courts have held to be a 'significant' number for purposes of Step 5 analysis.").

Plaintiff argues that the VE's testimony regarding the number of interviewer jobs in the national economy was inconsistent with the reference guide SkillTRAN Job Browser Pro ("SkillTRAN").[4] ECF No. 27, at 7-9. "'An ALJ may take administrative notice of any reliable job information, including information provided by a VE,' and the 'VE's recognized expertise provides the necessary foundation for his or her testimony.'" Shaibi v. Saul, Civ. No. 18-56, 2019 WL 3530388, at *6 (E.D. Cal. Aug. 2, 2019) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)). The Social Security regulations specifically provide that ALJs may take administrative notice of reliable job information available from publications, including the DOT,

---

[4] SkillTRAN "is a private software program that cross references the [Dictionary of Occupational Titles] and Occupational Outlook Handbook with the other major coding systems, including [Occupational Employment Statistics]." Blake v. Colvin, Civ. No. 14-52, 2015 WL 3454736, at *9 n.5 (D. Vt. May 29, 2015) (citing Wright v. Colvin, Civ. No. 12–1893, 2014 WL 5456044, at *5 (C.D. Cal. Oct. 27, 2014)).

but make no mention of SkillTRAN. See 20 C.F.R. § 404.1566(d) ("we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of - (1) Dictionary of Occupational Titles, published by the Department of Labor. . ."); SSR 00-4P, 2000 WL 1898704, at *2 ("we will take administrative notice of 'reliable job information' available from various publications, including the DOT."). In the case at bar, the VE stated that his testimony at the hearing was consistent with the DOT and was also based upon his 20 years of experience practicing as a vocational specialist. Tr. 67-68.

Plaintiff has not cited to any legal authority requiring that the VE consult SkillTRAN. Additionally, Plaintiff has not argued that the VE's testimony regarding the number of interviewer jobs in the national economy was inconsistent with the DOT. Thus, Plaintiff's argument that the VE should have consulted SkillTRAN cannot prosper as the VE properly relied upon the DOT in determining the number of interviewer jobs available in the national economy. See Auger v. Astrue, 792 F. Supp. 2d 92, 95 (D. Mass. 2011) ("the occupational evidence provided by a VE 'generally should be consistent with the occupational information supplied by the DOT.'" (citing SSR 00–4p, 2000 WL 1898704, at *2)). Similarly, Plaintiff's argument that his RFC is inconsistent with SkillTRAN's educational requirements for the interviewer job is also unpersuasive because Plaintiff has not identified any legal requirement obligating the VE to consult SkillTRAN.[5]

Lastly, Plaintiff argues that the ALJ erred in determining that work existed in significant numbers in the national economy without specifically finding that work existed in significant numbers in either the region that he lived or in several regions of the United States. ECF No. 27, at 8. At step five, the Commissioner has the burden "to prove the existence of other jobs in the

---

[5] The DOT classifies the job of interviewer as SVP-2. See DOT 205.367-014, 1991 WL 671715, (4th Ed. Rev. 1991).

national economy that the claimant can perform." Vega-Valentin v. Astrue, 725 F. Supp. 264, 268 (D.P.R. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(v)). "The phrase 'work which exists in the national economy' means 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" Velez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 466 n.1 (D.P.R. 2010) (quoting 42 U.S.C. §423(d)(2)(A)). "Isolated jobs that exist only in very limited numbers and relatively few locations outside of the region where [the claimant] lives are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566(b).

"However, courts have overlooked an absence of testimony that jobs do exist 'in several regions of the country' when 'a reasonable mind could conclude' that they do." Vining, 720 F. Supp. 2d at 138 (finding that "given the number of jobs the vocational expert revealed nationally (10,000–11,000), it was reasonable for the Administrative Law Judge to infer that such jobs exist in several regions."); Hayden v. Saul, Civ. No. 19-187, 2020 WL 888002, at *11 (E.D. Mo. Feb. 24, 2020) ("The absence of any reason to believe these jobs only exist in a few isolated regions supports a finding that the ALJ's Step Five finding was supported by substantial evidence."); John D.C. v. Comm'r of Soc. Sec., Civ. No. 17-1116, 2018 WL 6018859, at *4-5 (S.D. Ill. Nov. 16, 2018) ("Plaintiff does not argue the jobs the VE identified exist only in isolation or in concentrated regions. Any such argument would be frivolous. The jobs identified by the VE (cleaner, kitchen helper, and laundry worker) are not regional."); Adams-Skillings v. Colvin, Civ. No. 12-84, 2013 WL 4434195, at *6 (D. Utah Aug. 14, 2013) ("The ALJ did not make a statement about pertinent jobs available to Plaintiff in the specific region where she resided. However, he clearly stated Plaintiff could perform work in the 'national economy' ... which by definition 'means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.' 42 U.S.C. § 423(d)(2)(A).").

In the case at hand, the VE testified that 36,000 interviewer jobs existed in the national economy and the ALJ determined that Plaintiff could perform work that existed in significant numbers in the national economy. Tr. 38, 66. While the ALJ did not specifically articulate in her decision that interviewer jobs exist in several regions of the United States, Plaintiff has not cited to any evidence that the interviewer jobs only exist in an isolated area or that they cannot be found in several regions of the country. Furthermore, Plaintiff did not cross examine the VE at the hearing regarding whether the interviewer job numbers could be broken down by region. See Robinson v. Astrue, Civ. No. 9-629, 2010 WL 4365755, at *5 (D. Me. Oct. 27, 2010) (explaining that plaintiff's counsel "could have inquired of the vocational expert whether the national numbers he gave for each of the jobs was restricted to one or two regions, or could be broken down by regions, but counsel did not. Under these circumstances, it was reasonable for the administrative law judge to infer that such jobs exist in several regions"). Thus, it was reasonable for the ALJ to infer that the 36,000 interviewer jobs exist in several regions of the United States. See Vining, 720 F. Supp. 2d at 138. The ALJ's step five determination is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

11

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of March, 2021.

s/Marcos E. López  
U.S. Magistrate Judge
